## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MICHEL LUKAS,** *on behalf of himself and all others similarly situated,* | |
| **Plaintiff,** | **Case No:** |
| **v.** | **CLASS ACTION COMPLAINT** |
| **EVIG, LLC d/b/a Balance of Nature,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

Plaintiff Michel Lukas ("Plaintiff" or "Mr. Lukas"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, brings this action against Evig, LLC d/b/a Balance of Nature ("Balance of Nature" or "Defendant"). For his Complaint, Plaintiff alleges the following based upon personal knowledge as to his own acts and experiences and upon the investigation conducted by counsel as to all other allegations:

### SUMMARY OF THE ACTION

1.      Plaintiff, on behalf of himself and all putative members of the "Class" (defined below), brings claims under the New York General Business Law ("N.Y. GBL"), specifically N.Y. GBL §§ 349, *et seq*. and N.Y. GBL §§ 350, *et seq*., against Balance of Nature as a class action.

2.      This action arises from the deceptive trade practices of Defendant in its manufacture and sale of dietary supplement products labeled "Fruits", "Veggies," and "Fiber & Spice" (collectively, the "Products") and its advertisements which claim that the Products can prevent, treat, cure, or mitigate the symptoms of serious disease conditions such as diabetes, arthritis, influenza, chronic fatigue, fibromyalgia, heart disease, and cancer.

3.      Balance of Nature's representations regarding the efficacy and health benefits of the Products on their labels, webpages and other marketing and advertising media and materials is

1

purposely deceptive to create a competitive advantage against compliant competitors. However, it is the consumers that ultimately suffer by this deviant and non-compliant behavior because Balance of Nature knowingly provides non-factual information in an attempt to deceive and entice sales to consumers.

4.     Plaintiff does not seek to impose requirements greater than those required by FDA regulations. Plaintiff's claims do not seek to expand upon, or call for stricter standards than, the labeling or marketing requirements established by FDA regulations.

**PARTIES**

5.     Plaintiff Lukas is a citizen and resident of Island Park, New York. Beginning in or around March 2023, Plaintiff purchased the Balance of Nature Fruits and Veggies Products from King Kullen Grocery Co., Inc. after noticing the health benefits mentioned in reviews and ads on Instagram and Amazon, which represented that the Products helped maintain bowel health and prevent constipation and ulcers, and was third party tested, gluten free, made with 100% natural fruits and vegetables, and did not contain any extra sugar, pesticides, or additives.

6.     At no point, either during Plaintiff Lukas' research on the Products or at the point of sale, did Defendant disclose that the Products did not have the health benefits that it advertised.

7.     Defendant is a limited liability corporation with its principal office in the State of Nevada. Balance of Nature makes and distributes dietary supplements throughout the United States and, specifically, to consumers in the state of New York.

8.     Defendant's Products are sold on its own and other third-parties' websites, along with through various physical retailers, including Amazon and Walmart. The Products are purchased by consumers for personal use and consumption in the state of New York and throughout the United States.

**JURISDICTION AND VENUE**

9.     This action is properly before this Court, and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. Specifically, at least one member

of the proposed class is a citizen of a different state from Balance of Nature, the number of proposed Class members exceeds 100, and the aggregate amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

10.     This Court has general and specific jurisdiction over the Defendant because Defendant has sufficient minimum contacts within the state of New York to establish Defendant's presence in the state of New York, and certain material acts upon which this suit is based occurred within the state of New York. Balance of Nature does substantial business in the state of New York and within this District, and otherwise maintains requisite minimum contacts with the state of New York. Specifically, Balance of Nature distributed and sold the Products in the state of New York.

11.     Venue is also proper in this District under 28 U.S.C. § 1391(b)(2) because Defendant is subject to personal jurisdiction within the state of New York and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, including that Plaintiff purchased and used the Products in the state of New York and in this District. Additionally, Balance of Nature distributes the Products in this District, receives substantial compensation and profits from the sale and lease of Products in this District, and has and continues to conceal and make misrepresentations and material omissions in this District.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### *VIOLATIONS OF FALSE ADVERTISING LAW*

12.     Defendant is in the business of developing, manufacturing, packaging, promoting, advertising, and selling dietary supplement products under the brand name "Balance of Nature". These dietary supplements include the individual product names "Fruits", "Veggies," and "Fiber & Spice."

### Disease Claims

13.     Defendant has disseminated extensive print, radio, television, and internet advertisements promoting its Balance of Nature products. In these advertisements, Defendant makes unsubstantiated, false, and/or misleading claims regarding the efficacy and health benefits

of its products, including claims that its products can prevent, treat, cure, or mitigate the symptoms of serious disease conditions, such as diabetes, arthritis, influenza, chronic fatigue, fibromyalgia, heart disease and cancer.

14.    These claims include, but are not limited to, the following:

a.    As depicted in the image below, on the label of the "Fiber & Spice" product, Defendant states:

i.    "Diabetics: Proven safe and effective for diabetics. Studies demonstrate that polyphenol compounds in Fiber & Spice improve insulin sensitivity leading to improved insulin function.

ii.    "Arthritis: Many of the phytochemicals found in Fiber & Spice have been shown to possess anti-inflammatory properties. Walking, jogging, hiking-bring it on."



b.    As depicted in the image below, on a pamphlet entitled "Quick Tips for Quick Relief," which accompanies the purchase of its products, Defendant states:

    i.  "When flu, cold, or allergy seasons come around double up [on Nature Veggie capsules] at the beginning and throughout the season, or just before the sign of a symptom. You'll be amazed at how fast you'll kick it!"

## Quick Tips For Quick Relief:

Do you have an itchy, sore, or scratchy throat? Sprinkle the contents of 3-6 Veggies capsules into a cup of warm broth, stir together and drink. Also, keep a few extra fruit capsules in your pocket to chew on when you feel symptoms coming on throughout the day. These two tricks will not only soothe your throat and ease coughing, but the much needed nutrients will be absorbed into your blood stream faster and give you a good boost of energy throughout your day.

When flu, cold, or allergy seasons come around double up at the beginning and throughout the season, or just before the first sign of a symptom. You'll be amazed at how fast you'll kick it!

Call your personal Health Coach to increase your order during the allergy, cold, and flu seasons, or any other time you feel you could use a nutritional boost!

c.  On a pamphlet entitled "What You Need to Know," which accompanies the purchase of its products, Defendant states:

    i.  "6&6: Prenatal/Energy/Minor symptoms…You may increase this dosage periodically to kick a cold of flu, in preparation for athletic events, to heal from injuries, to prepare for and heal from surgeries[.]"

    ii.  "9&9: Severe condition/Chronic condition. If you experience a severe or chronic condition we recommend increasing your dose to 9 Fruits and 9 Veggies every day. This includes conditions of the heart, liver problems, chronic fatigue, fibromyalgia, etc. This increased dosage, combined with a healthy lifestyle, will supply extra nutrition your body needs to recruit

and repair."

    d.  In the "What You Need to Know" pamphlet, as depicted in the images below, Defendant go so far as to advertise its supplements as effective against cancer and "life threatening condition[s]." The following are examples of such advertisements:

        i.  "12&12 Quicker results/Life threatening condition. If you have been diagnosed with life threatening illness, we recommend you take at least 12 Fruits and 12 Veggies every day…It is recommended to help your body get through crises and you will gradually decrease your dosage as your health improves and your body gets stronger."



        ii.  "The ingredients in Fiber & Spice can help reduce the risk of cancer[.]"

## Fiber & Spice
### Determine your dosage

Fiber & Spice is an important part of your daily health regimen because it delivers nutrition from a whole different source, in a new way. Psyllium husk, whole apple, and flax seed deliver a full range of fiber: insoluble, soluble, and even in between. Spices deliver potent phytonutrition. Ground flax delivers omega fatty acids preserved by the spices. This unique combination of whole food aids in bowel health, cancer prevention, balancing blood sugar, lowering cholesterol, and much more.

Taking Fiber & Spice is easy. With sufficient hydration there is no risk of overdosing. Fiber & Spice will regulate both loose and tight bowels as needed. For tips on feeding it to children, see page 23.

To find your best dosage, start by drinking 2 scoops in at least 16 ounces of liquid every day. After a few days, increase your dose to 3 scoops once a day, or 2 scoops twice a day. Be sure to increase your fluid intake proportionately. For personal recommendations, contact your Health Coach.

Maintaining Bowel Health: Healthy, clean bowels are an important part of a healthy lifestyle. Fiber & Spice is not just for the elderly or those with digestive issues. Our modern diets and lifestyles make a daily fiber supplement necessary for optimal health and wellness.

Constipation: If you suffer from constipation, evaluate your physical activity, your hydration levels, and your fiber intake. If your bowels tend to be sluggish, consider increasing your Fiber & Spice dosage permanently. Some extra TLC will help keep them clean and running smoothly. You can also take an extra scoop every now and then if you are usually regular, but have a bad day.

Diarrhea: Fiber & Spice will regulate your bowels. Don't be afraid to increase your dosage if you are experiencing loose bowels. Fiber & Spice does not cause diarrhea. If you suffer from diarrhea, your body may require an increased daily dose.

Inflammation: The spices in Fiber & Spice help decrease inflammation, calm the bowels, and ease bowel conditions such as hemorrhoids, diverticulosis, and irritable bowels. We recommend starting with a standard dosage and increasing as needed.

Blood Sugar: Naturally occurring polyphenol compounds found in Fiber & Spice help to balance blood sugar levels. Many customers have found success when taking the regular daily dosage consistently.

Weight Loss: Studies show that increasing your fiber consumption aids in weight loss. Drink 1-2 heaping scoops of Fiber & Spice in 16-20 ounces of liquid 30 minutes before each meal.

And More: The ingredients of Fiber & Spice can help reduce the risk of cancer, balance cholesterol levels, and much more. Contact your Health Coach for more information and personal dosage suggestions.



15.   Defendant was well aware that it was unlawful to advertise its products as having an effect on serious disease conditions or "life threatening" conditions. In an August 20, 2019 letter for example, the Food and Drug Administration ("FDA") warned Defendant that making advertising claims such as those listed above violated the Federal Food, Drug, and Cosmetic Act ("FDCA") because such claims had not been approved by the FDA. The New York General Business Law ("N.Y. GBL"), specifically N.Y. GBL §§ 349, *et seq.* and N.Y. GBL §§ 350, *et seq.*, contains parallel prohibitions to the FDCA regarding disease claims. (See Health & Saf. Code, §§ 109875, et seq.) The advertising claims described herein violate the Sherman Act for the same reasons, as discussed below.

### Other Advertising Claims

16.   In addition to the above disease claims, Defendant makes other advertising claims which are untrue and misleading regarding the composition of its products. These advertising claims include, but are not limited to, statements that Defendant's Fruits and Veggies products contain the "[n]utritional equivalent of over 5 servings" of fruits and vegetables, that "Fruits and

Veggies® are 100% whole fruits and vegetables," and that "[t]he unique processes [Defendant] use to remove the water and air from the produce locks in 99.9% of the fresh fruit and vegetable nutrition."

17.    On information and belief, Defendant has removed the fiber from the dehydrated fruits and vegetables in its Fruits and Veggies products. For example, the "Supplement Facts" panel on the label of Defendant's Fruits and Veggies products does not list dietary fiber as an ingredient in either product.



18.    By removing the fiber, Defendant's Fruits and Veggies products fail to provide the nutritional equivalence of fresh fruits and vegetables, thus rendering the above claims untrue and misleading.

### Customer Testimonials

19.    In addition to direct advertising claims, Defendant's advertisements also include testimonials purportedly from its customers. Defendant uses these testimonials to make additional unsubstantiated, false, and/or misleading claims regarding the effectiveness of its dietary supplement products, including claims that these products prevent, treat, mitigate, or cure disease conditions.

20.    Such testimonials include, but are not limited to, the examples below:

a. "The Whole health system has helped get rid of my insomnia, my depression, give me energy, and help my IBS. I'm so lucky to have found Balance of Nature."— Dustin D., posted on the Balance of Nature website.

b. "My husband had been experiencing joint pain all over his body to the point where he couldn't even play Golf without experiencing excruciating pain. I, on the other hand, was going through all sorts of menopausal problems. My thyroid was out of balance. I was diagnosed as having hypothyroidism…We followed [Balance of Nature personal health coach's] advice and we increased our intake from 6 a day each to 12 a day (6 of each) and two scoops of the F&S morning and night. For myself, I started to immediately tell the difference in my joints. I suffered from chronic hay fever in the past and now I feel so good and I hardly ever experience hay fever at all. My joint pain is gone. I am working out as powerfully as before. My nails are strong, my skin looks great. Rick, my husband Golfs regularly now without the uncomfortable pain. My last blood word showed that my cholesterol level is normal, my sugar level is normal, my thyroid level is super duper normal." –Rosa S., posted on the Balance of Nature website.

c. "Balance of Nature has given me more energy, no more b12 shots, taken me off most of my blood pressure meds and just made me feel overall better health. It has also made me have less flare ups of my Myasthenia Gravis." – Paula B., posted on

the Balance of Nature website.

d. "I started taking Balance of Nature in early June after hearing your ad on the radio. I was desperate. I had high blood pressure and cholesterol, stiffness in body, pain in legs, knees, and lower back when I walked. My legs felt heavy and swollen as well as my arms and hands. I felt so stiff, I couldn't even bend to tie my shoelace. Scary. After taking Balance of Nature for about 2 weeks, I had my blood pressure tested and it was down 6 points. I also noticed I didn't have stiffness, heaviness in my legs or pains in my body when I walked and moved." – Joanne [last name unknown], pamphlet entitled "Success Story" included with shipment of Defendant's products.

21.    By prominently promoting such consumer endorsements, Defendant is in effect representing that its products will be effective for the disease conditions stated in the endorsements and that the endorsers' experience will be representative of what consumer in general will achieve with the products.

22.    As set forth above, Defendant lacks the scientific substantiation and the regulatory approval to claim that its products will prevent, treat, mitigate, or cure the disease conditions cited the consumer endorsements they promote.

23.    Accordingly, Defendant disseminated advertising in New York with the intent to sell its dietary supplement products, which Defendant knew, or should have known, was untrue or misleading in violation of applicable New York statutes.

24.    Further, by virtue of the advertisements set forth above, Defendant represented that its products had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.

## CLASS ACTION ALLEGATIONS

25.    Under Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (c)(4), Plaintiff intends to seek

certification of a Nationwide Class consisting of:

> **All persons who purchased the Products in the United States**
> **from within four years of the filing of this action through the**
> **present.**

26.     Plaintiff also intends to seek certification of a New York Subclass consisting of:

> **All natural persons who purchased the Products in the state of**
> **New York from within four years of the filing of this action**
> **through the present.**

27.     Plaintiff reserves the right to re-define the Nationwide Class and New York

Subclass at the conclusion of discovery as to class certification.

28.     Collectively, unless otherwise so stated, the above-defined Nationwide Class and

New York Subclass are referred to herein as the "Class."

29.     Excluded from the Class are Defendant; any affiliate, parent, or subsidiary of

Defendant; any entity in which Defendant has a controlling interest; any officer, director, or

employee of Defendant; any successor or assign of Defendant; anyone employed by counsel for

Plaintiff in this action; any judge to whom this case is assigned, his or her spouse, and all persons

within the third degree of relationship to either of them and the spouses of such persons.

### *NUMEROSITY*

30.     The members of the Class are so numerous that joinder of all members is

impracticable. While the exact number of Class members is unknown and such information is in

the exclusive control of Defendant, Plaintiff believes that the Class encompasses thousands of

individuals who are geographically dispersed throughout the nation; therefore, the number of

persons who are members of the Class are so numerous that joinder of all members in one action

is impracticable.

### *COMMON QUESTIONS OF LAW AND FACT PREDOMINATE*

31.     There is a well-defined community of interest in the questions of law and fact

affecting the Class members.

32.     There are questions of law and fact common to all members of each Class:

specifically, Plaintiff's claims arise from the same event or practice or course of conduct by the Defendant giving rise to those claims of the putative Class, and Plaintiff's claims are based upon the same legal theories as those of the putative Class. The Defendant has engaged in a pattern and practice, in violation of the law, of misrepresenting the efficacy and health benefits of the Products. The resolution of this issue—to wit, whether Defendant knowingly sold the Products with misleading information and did not inform Plaintiff and Class members—is a common question of fact and law that will affect all members of the Class in the same manner.

33.     Other questions of law and fact common to the Class that predominate over questions that may affect individual members include:

a.  The nature, scope, and operation of Defendant's wrongful practices;

b.  The uniformity of the advertisements created through Defendant's marketing materials;

c.  Whether Balance of Nature misrepresented the efficacy and health benefits of the Product;

d.  Whether Defendant engaged in fraudulent and/or deceptive practices as to the Class members;

e.  Whether Balance of Nature violated state consumer protection laws by misrepresenting the efficacy and health benefits of the Product;

f.  Whether Defendant's conduct amounts to violations of the N.Y. GBL Sections 349 and/or 350;

g.  Whether Balance of Nature deliberately misrepresented and omitted material facts to Plaintiff and the Class members;

h.  Whether members of the Class may be notified and warned about the contents of the Products and have the entry of final and injunctive relief compelling Balance of Nature to stop its misrepresentations; and

i.  Whether Plaintiff and the Class suffered damages because of Defendant's misconduct and if so, the proper measure of damages.

### *TYPICALITY*

34.     The claims and defenses of Plaintiff Lukas are representative of the Class members he seeks to represent and typical of the claims of the Class because the Plaintiff and the Class

members all purchased the Products. Plaintiff, like all Class members, purchased the Products when they were presented by Defendant, through its representations on the Product's label and through Defendant's marketing and advertising of the Product, that the Products could prevent, treat, cure, or mitigate the symptoms of serious disease conditions.

## ADEQUACY OF REPRESENTATION

35.     Plaintiff Lukas will fairly and adequately assert and protect the interests of the proposed Class because:

   a.  He has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Class;

   b.  He has no conflict of interest that will interfere with the maintenance of this class action; and

   c.  He has suffered consumer-related injuries and damages.

## SUPERIORITY

36.     A class action provides a fair and efficient method for the adjudication of the instant controversy for the following reasons:

   a.  The common questions of law and fact set forth above predominate over questions affecting only individual Class members;

   b.  The proposed class is so numerous that joinder would prove impracticable. The proposed Class, however, is not so numerous as to create manageability problems; moreover, no unusual legal or factual issues render the Class unmanageable;

   c.  Prosecution of separate actions by individual members of the Class would risk inconsistent and varying adjudications against Defendant;

   d.  The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover for the damages done to them by Balance of Nature; and

   e.  A class action would be superior to, and more efficient than, adjudicating thousands of individual lawsuits.

37.     In the alternative, the proposed Class may be certified because:

   a.  the prosecution of separate actions by the individual members of the proposed Class would create a risk of inconsistent or varying adjudication regarding individual Class members, which would

establish incompatible standards of conduct for Balance of Nature;

b. the prosecution of separate actions by individual Class members would create a risk of adjudications dispositive of the interests of other Class members, not parties to the adjudications and substantially impair or impede their ability to protect their interests; and

c. Balance of Nature has acted or refused to act on grounds generally applicable to the proposed class, which justifies final and injunctive relief for the members of the proposed Class as a whole.

<strong>ESTOPPEL FROM PLEADING AND TOLLING OF<br>APPLICABLE STATUTES OF LIMITATIONS</strong>

38.     Defendant possessed exclusive knowledge about the efficacy and health benefits of the Product, including from its customer complaint and warranty records, internal emails, reports, analyses, and assessment of ingredients from suppliers, all of which are unavailable to Plaintiff and the proposed Class members.

39.     Throughout the time period relevant to this action, Defendant concealed and misrepresented the efficacy of the Products. As a result, neither Plaintiff nor the absent Class members could have discovered the unfair and deceptive trade practices detailed herein, even upon reasonable exercise of diligence.

40.     Despite its knowledge of the above, Defendant (a) failed to disclose, (b) concealed, (c) misrepresented, and (iv) continues to conceal and misrepresent critical information relating to the Product's efficacy and health benefits, even though, at any point in time, it could have correctly communicated this material information to Plaintiff and the Class through individual correspondence, media releases, or other means.

41.     Plaintiff and Class members relied on Defendant to disclose the efficacy and health benefits of the Products because the contents could not be discovered through reasonable efforts by Plaintiff and the Class members.

42.     Thus, the running of all applicable statutes of limitations have been suspended with respect to any claims that Plaintiff and the Class members have against Defendant as a result of Defendant's misrepresentations and omissions, by virtue of the fraudulent concealment doctrine.

43.     Balance of Nature was under a continuous duty to Plaintiff and Class members to disclose the true nature, quality, and character of its Products. However, Defendant misrepresented and/or omitted the true nature, quality, and character of the Product, as described herein. Based upon the foregoing, Balance of Nature is estopped from relying on any statutes of limitation or repose that might otherwise apply to the claims asserted by Plaintiff herein in defense of this action.

**FIRST CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

44.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

45.     Balance of Nature sold the Products to Class members under implied warranties of merchantability and fitness. Balance of Nature impliedly warranted the Products to be merchantable, fit for the ordinary purposes for which it was intended to be used (including the guarantee that they were in a safe and non-defective condition for use by its purchasers for the ordinary purpose for which they were intended and were not otherwise injurious). Balance of Nature is under a duty to design, manufacture label, and test the Products to make them suitable for the ordinary purposes of their use—dietary supplements that provide nutritional value equivalent to that of real fruits and vegetables.

46.     Balance of Nature breached its implied warranties for the Products by selling "fruit" and "vegetable" dietary supplements that lack the nutritional value equivalent to that of actual fruits and vegetables. The Products are therefore defective, unfit for the ordinary purposes for which they were intended to be used, and not merchantable.

47.     When Plaintiff and Class members purchased the Products, Defendant represented the Products as dietary supplements that (a) can prevent, treat, cure, or mitigate the symptoms of serious disease conditions, (b) were adequately labeled, (c) would pass without objection in the trade, and (d) would be fit for the ordinary purposes for which nutritional supplement pills are used.

48.     Defendant knew that its Products would be purchased by consumers seeking

15

treatment for disease conditions and illnesses or otherwise consuming supplements providing identical health benefits to fruits and vegetables, so it developed the Products and its related marketing and advertisements for these specific purposes. Defendant knew that the Products would be sold by retailers for use by consumers with these specific disease conditions and illnesses and dietary needs. Accordingly, direct privity is not required to bring this cause of action.

49.     Because the Products does not prevent, treat, cure or mitigate the symptoms of serious disease conditions and/or nutritional value equivalent to that of real fruits and vegetables which were represented by Defendant to Plaintiff and the Class, the Products purchased and used by Plaintiff and Class members is not merchantable. Balance of Nature breached the implied warranty of merchantability in the sale of the Products to Plaintiff and the Class members in that the Products were not fit for their ordinary purpose and not merchantable.

50.     Balance of Nature recently entered into a multi-million Judgment against Balance of Nature in California to resolve multiple claims brought by various California District Attorneys. Said Judgment precludes Balance of Nature continuing the wrongful conduct. In light of said Judgment, Balance of Nature has now focused its wrongful conduct on the citizens of other states, including the citizens of New York.

51.     Balance of Nature has clearly been on notice of these material omissions and/or misrepresentations through, upon information and belief, its own internal research, the claims made by the prosecutors in California, its internal development process, and through the nutritional disclosures made it to by its suppliers of ingredients for the Products. Balance of Nature has had the opportunity to correct its misrepresentations of the Product's efficacy and health benefits but has chosen not to do so. Moreover, Plaintiff has sent a notice letter to the Defendant and immediate seller seeking a remedy for the material omissions and/or misrepresentations alleged herein. When confronted with the allegations herein, neither Defendant nor the immediate seller have remedied the omissions and/or misrepresentations.

52.     On Friday, November 17, 2023, Balance of Nature entered into a Consent Decree

with the FDA, based upon similar allegation to those contained herein, to stop further manufacture and sales of the Product at issue herein.

53.     As a direct and proximate result of Balance of Nature's breach of the implied warranty of merchantability and fitness for a particular purpose, Plaintiff and Class members did not receive the benefit of their bargains.

54.     Plaintiff and Class members are entitled to damages and other legal and equitable relief, including the purchase price of the Products, overpayment, or loss of the benefit of the bargain.

**SECOND CLAIM FOR RELIEF**
**Breach of Express Warranty**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

55.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

56.     Defendant extended, by way of the Products label, Products descriptions and representations as to the Products' qualities and characteristics, on its website, and via advertisements (among other in-person and digital marketing methods, as detailed herein) express warranties to Plaintiff and Class members that the Products could prevent, treat, cure or mitigate serious disease conditions. These promises and representations became part of the basis of the bargain between the parties and thus constituted an express warranty.

57.     Defendant sold the Products, and Plaintiff and Class members purchased the Products, based upon these representations and express warranties.

58.     However, Defendant breached the express warranties in that the Products did not in fact contain the qualities and characteristics, as set forth in detail herein. As a result of this breach of the express warranty, Plaintiff and other consumers did not receive the Products as warranted by Defendant.

59.     Balance of Nature has been on notice of these material omissions and/or misrepresentations through, upon information and belief, its own internal research and

development process, and through the nutritional disclosures made to it by its suppliers of ingredients for the Products. Balance of Nature has had the opportunity to correct its misrepresentations of the Product's efficacy and health benefits but has chosen not to do so.

60.     As a proximate result of this breach of express warranty by Defendant, Plaintiff and the Class have suffered damages, injury in fact, and ascertainable loss in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### Common Law Fraud By Omission
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

61.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

62.     At all relevant times, Balance of Nature was engaged in the business of designing, manufacturing, and selling the Products.

63.     Defendant, acting through its representatives or agents, delivered the Products to distributors, manufacturers, and various other distribution channels.

64.     Defendant willfully, falsely, and knowingly omitted and misrepresented material facts regarding the quality and character of the Products.

65.     Rather than disclosing material facts to Class members, including but not limited to, the fact that the Products cannot prevent, treat, cure or mitigate the symptoms of serious disease conditions, Balance of Nature concealed and misrepresented key information related to the Product's efficacy and health benefits and continued manufacturing and selling the Products without making accurate disclosures regarding the same.

66.     Balance of Nature omitted and misrepresented the efficacy and health benefits of the Products to drive up sales and maintain its market power, since Balance of Nature knew consumers would not purchase the Products (or would pay substantially less for the Products), had the Products' true efficacy been advertised and represented to consumers.

67.     Consumers could not have discovered the actual efficacy of the Products on their

own. Balance of Nature was in exclusive possession of such information.

68.     Although Balance of Nature had a duty to ensure the accurate representation of its Products and to ensure accuracy of information regarding the Products' health benefits, it did not fulfill these duties.

69.     Plaintiff and Class members sustained injury due to the purchase of the Products not preventing, treating, curing, or mitigating the symptoms of the disease conditions represented by Defendant. Plaintiffs and Class members are entitled to recover full refunds for the Products, or they are entitled to damages for loss of the benefit of the bargain or the diminished value of the Products, amounts to be determined at trial.

70.     Defendant's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the rights of Plaintiff and Class members; and to enrich themselves. Its misconduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future. Punitive damages, if assessed, shall be determined according to proof at trial that Defendant's acts were done maliciously, oppressively, deliberately, and with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights, and in part to enrich itself at the expense of consumers. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

**FOURTH CLAIM FOR RELIEF**
**Equitable Injunctive and Declaratory Relief**
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

71.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

72.     Balance of Nature is under a continuing duty to inform its customers of the efficacy and health benefits of the Products that it has sold.

73.     Plaintiff, members of the Class, and members of the general public will suffer irreparable harm if Balance of Nature is not ordered to cease misrepresenting the efficacy and health benefits of the Product.

74.     Injunctive relief is particularly necessary in this case because: (1) Plaintiff and the absent Class members desire to purchase products with the same qualities and attributes as Defendant advertised the Products to have; (2) if Defendant actually manufactures the Products with the efficacy and health benefits advertised, Plaintiff and Class members would purchase the Products; (3) Plaintiff and Class members do not have the ability to determine whether Defendant's representations concerning the Products will be truthful if they purchase the Products.

75.     Despite Plaintiff's and Class members' desire to purchase the Products in the future, they expect that Defendant will continue to misrepresent the efficacy and health benefits of the Products and will thus suffer harm that cannot be adequately remedied by the additional claims for damages alleged herein.

### FIFTH CLAIM FOR RELIEF
**Violation of the New York General Business Law § 349,**
**N.Y. Gen. Bus. Law § 349**
**(On behalf of the New York Subclass)**

76.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

77.     Plaintiff Lukas brings this claim individually and on behalf of the proposed New York Subclass against Balance of Nature.

78.     Plaintiff and New York Subclass members are "persons" within the meaning of the N.Y. GBL. *See* N.Y. Gen. Bus. Law § 349(h).

79.     Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of the N.Y. GBL. *See* NY. Gen. Bus. Law § 349(b).

80.     Under N.Y. GBL section 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce" are unlawful.

81.     In the course of Balance of Nature's business, it failed to disclose and, indeed, actively misrepresented the actual efficacy and health benefits contained in the Products with the intent that consumers rely on that concealment and misrepresentation in deciding whether to purchase the Product.

82.     By intentionally misrepresenting that the Products could prevent, treat, cure or mitigate the symptoms of serious disease conditions represented by packaging and advertising the Products as dietary supplements conducive to consumers' health goals, Balance of Nature engaged in deceptive acts or practices in violation of N.Y. GBL section 349.

83.     Balance of Nature's deceptive acts or practices were materially misleading and were likely to and did deceive reasonable consumers, including Plaintiff Lukas and the New York Subclass members, relating to its efficacy and health benefits and, therefore, the suitability of the Products to Plaintiff's and other New York Subclass members' health goals.

84.     Plaintiff Lukas and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Balance of Nature suppressed.

85.     Defendant's misleading conduct set forth above occurred in the conduct of trade or commerce.

86.     Balance of Nature's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct also includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

87.     Plaintiff Lukas and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's violations. Plaintiff Lukas and New York Subclass members are entitled to recover their actual damages or fifty dollars ($50.00), whichever is greater. Additionally, because Balance of Nature acted willfully or knowingly, Plaintiff and New York Subclass members are entitled to recover three times their actual damages up to one thousand dollars ($1,000.00). Plaintiff is also entitled to reasonable attorney's fees.

### SIXTH CLAIM FOR RELIEF
**Violation of the New York General Business Law § 350,**
**N.Y. Gen. Bus. Law § 350**
**(On behalf of the New York Subclass)**

88.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

89.     Plaintiff Lukas brings this claim individually and on behalf of the proposed New York Subclass against Balance of Nature.

90.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:  False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

91.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual …

92.     Defendant's labeling and advertisements relating to the efficacy and health benefits of the Products were false and misleading in a material way, as Balance of Nature failed to accurately reveal material facts in light of such representations or conduct.

93.     Specifically, Balance of Nature represented that the Products could prevent, treat, cure or mitigate the symptoms of serious disease conditions, and that it was conducive to consumer health goals in that way, while omitting material information concerning the true efficacy of the Product.

94.     These misrepresentations and omissions have resulted in consumer injury or harm to the public interest.

95.     As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Products had they known the truth, and (b) they overpaid for the Products on account of the

misrepresentations and omissions regarding the efficacy and health benefits of the Product.

96.     By reason of the foregoing and as a result of Balance of Nature's conduct, Plaintiff and New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars ($500.00), whichever is greater. Additionally, because Balance of Nature acted willfully or knowingly, Plaintiff and New York Subclass members are entitled to recover three times their actual damages up to ten thousand dollars ($10,000.00). Plaintiff is also entitled to reasonable attorney's fees.

## SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment
**(On behalf of the Nationwide Class or, alternatively, on behalf of the New York Subclass)**

97.     Plaintiff hereby incorporates each and every allegation as though fully set forth herein.

98.     To the extent that there is any determination made by the Court that Plaintiff does not have standing to assert any contractual claims asserted against Balance of Nature on the alleged basis of an absence of contractual privity or otherwise, this claim is asserted in the alternative.

99.     By its wrongful acts and omissions described herein, including selling the Products which does not prevent, treat, cure or mitigate the symptoms of serious disease conditions represented on its labels and in its marketing and advertising of the Product, Balance of Nature was unjustly enriched at the expense of Plaintiff and the Class.

100.     Plaintiff and Class members purchased a product they otherwise would not have, paid more for a product than they otherwise would have, and are left with a product of diminished value and utility because of the Products' inability to prevent, treat, cure or mitigate the symptoms of serious disease conditions. Meanwhile, Balance of Nature has sold more of the Products than it otherwise could have and charged inflated prices for the Products, thereby unjustly enriching itself.

101.     Thus, Plaintiff and Class members conferred a benefit upon Balance of Nature by purchasing the Products at the full price. Under the circumstances, it would be inequitable for Balance of Nature to retain the profits, benefits, and other compensation obtained through its

wrongful conduct in manufacturing, marketing, and selling the Products to Plaintiff and Class members based on the misrepresentation and/or omissions pertaining to the Products' efficacy and health benefits.

102.    Plaintiff and Class members are entitled to damages in the amount Defendant was unjustly enriched, to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a.   For an order certifying the proposed Class and appointing Plaintiff and Plaintiff's counsel to represent the Class;

b.   For an order awarding Plaintiff and Class members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

c.   For an order awarding Plaintiff and Class members restitution, disgorgement and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

d.   For an order or orders requiring Balance of Nature to adequately disclose the efficacy and health benefits of the Products and enjoining Balance of Nature from misrepresenting that the Products can prevent, treat, cure or mitigate the symptoms of serious disease conditions and omitting accurate efficacy and health benefits information;

e.   For an order awarding Plaintiff and Class members pre-judgment and post-judgment interest;

f.   For an order awarding Plaintiff and Class members reasonable attorney fees and costs of suit, including expert witness fees; and

g.   For an order awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the members of the Class, hereby respectfully demands trial by jury of all issues triable by right.

Dated: November 21, 2023.                    Respectfully submitted,

Nicholas A. Migliaccio
(New York Federal Bar No. 4035838)
Jason S. Rathod*
412 H Street NE, Suite 302
Washington, DC 20002
Tel. (202) 470-3520
nmigliaccio@classlawdc.com
jrathod@classlawdc.com

Aaron Rihn, Esq.*
Sara J. Watkins, Esq. *
Robert Pierce & Associates, P.C.
707 Grant Street
Suite 125
Pittsburgh, PA 15219
Tel. (412) 281-7229 (Tel.)
arihn@peircelaw.com

Robert Mackey, Esq. *
Law Offices of Robert Mackey
P.O. Box 279
Sewickley PA 15143
Tel. (412) 370-9110
bobmackeyesq@aol.com

*pro hac vice admission to be sought

*Attorneys for Plaintiff and Putative*